UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARTIN A. RECKLAW | ) | Case No. 5:08 CV 00425 |
| | ) | |
| Plaintiff, | ) | Judge Donald C. Nugent |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Martin A. Recklaw seeks reversal of the Commissioner's decision denying his applications for disability insurance benefits and supplemental security income.  Recklaw is an individual in his forties with past relevant work as a truck driver. He claims he suffered a disabling industrial accident on September 9, 1998 when he fell off a broken truck step. (Tr. 298). Recklaw previously applied for disability insurance benefits and supplemental security income benefits  which were denied on July 1, 2003 by an ALJ. (Tr. 16). The Commissioner states that no judicial review was sought and that matter has become *res judicata*. Recklaw does not contest this finding, so the earliest date he is eligible for benefits is July 2, 2003.  His current applications for benefits were filed in November 2003 and were denied by an ALJ on June 29, 2006, following an administrative hearing . The Appeals Council adopted this decision making it the final decision by the Commissioner. See 20 C.F.R. §404.981, §416.1481. At issue then is the June 29, 2006 determination.

The ALJ found that Recklaw suffered mild to moderate multilevel disc degenerative changes and major depression. The ALJ found that Recklaw could not return to his past relevant work,

5:08 CV 425                                   2

 but his impairments did not prevent him from performing light work, reduced non-exertionally by a limitation to simple, repetitive work without public contact. (Tr. 24-26, 517).  A vocational expert appearing at the administrative hearing testified that the job base for unskilled work would not be eroded  significantly by the restriction against customer service type jobs. (Tr. 517).  A medical advisor, Dr. Brahms, also testified at the administrative hearing, but the ALJ  did not rely on this doctor's  opinion. (Tr. 20).[1]  Recklaw challenges the June 29, 2006 determination contending that he is disabled primarily on the medical opinions of disability from treating sources and other medical evidence of record which he argues indicates only disability.[2] This dispute has  led to this appeal under 42 U.S.C. §405(g) and §1383(c)(3), which has been referred for report and recommended disposition. For the reasons that follow, it is recommended that this matter be remanded to the Commissioner under the Fourth Sentence of 42 U.S.C. §405(g).


*Standard of Review:*

        The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision.  Substantial evidence is evidence that a reasonable mind  would  accept  as  adequate  to  support  the  challenged  conclusion.  *Casey v. Secretary of Health & Human Services*,  987 F.2d 1230, 1233 (6th Cir. 1993);  *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see

---

[1] Dr. Brahms stated that physically Recklaw could perform a partial range of light work with no repetitive lifting below waist level, no  ladders, ropes, scaffolds and with avoidance of kneeling, stooping and crawling. (Tr. 506).

[2] The Commissioner does not contest that Dr. Leftkovitz and Dr. Queen-Williams qualify as "treating sources" as defined under 20 C.F.R. §§404.1502 and 416.902, or that there was a "treatment relationship" for purposes of §§404.1527(d)(2) and 416.927(d)(2).

5:08 CV 425                                         3

*Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").


*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(i) and (ii) and §416.920(a)(4)(i) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the

5:08 CV 425                                                                     4

Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Ellis v. Schweiker*, 739 F.2d 245 (6th Cir. 1984); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).


*Dr. Lefkovitz' Opinion of Disability:*

     The ALJ acknowledged that Recklaw's treating physician, Dr. Lefkovitz ,had written several opinions that Recklaw is disabled, but rejected these opinions stating, "the assessments are not specific enough for SSA disability evaluations purposes, e.g. the amount of weight the claimant could lift/carry frequently. In addition, Dr. Leftkovitz's opinions are unsupported by his treatment records, which generally note examinations of the claimant to be normal." (Tr. 20).


     Dr. Lefkovitz  reported that MRI revealed degenerative changes with posterior bulging at L4-5,  spondylosis with anterior listhesis at L5-S1, and "some" degenerative disc changes at L3-4. (Tr. 297). There was reported tenderness and tightness affecting the lumbar paravertebral muscles with decreased range of motion at 30 degrees flexion, 5 degrees extension and 5 degrees lateral flexion. (Tr. 292, 297). The "motor" and "tone" for both the upper and lower extremities was normal, sensory exam was normal, as were deep tendon reflexes, but gait and station was reportedly abnormal (Tr. 288).  The doctor prescribed analgesics (including Oxycontin and Vicodin), anti-inflammatants and a TENS unit.(Tr. 290, 292, 297). He opined that Recklaw had difficulty sitting or standing for prolonged periods or doing any significant lifting, and that Recklaw was totally and permanently disabled from any form of sustaining employment (Tr. 297).

5:08 CV 425                                        5

Recklaw argues that the ALJ failed to give sufficient weight to the opinion of the treating physician or adequately consider the evidence of other medical providers. In determining the question of substantiality of the evidence, reports of physicians who have treated the claimant over a long period of time are entitled to greater weight than the reports of physicians employed by the government for the purpose of defending against a claim for disability. See 20 C.F.R. §404.1527(d)(2); §416.927(d)(2).; 20 C.F.R. §404.1527(d)(3); §416.927(d)(3). This is commonly known as the treating physician rule. See *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *Wilson* v. *Commissioner of Soc. Sec.*, 378 F.3d 541, 544(6th Cir. 2004). The ALJ must give the opinion from the treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004) quoting 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2). When the ALJ does not give the opinion from a treating physician controlling weight because it is unsupported or inconsistent with other substantial evidence, then the ALJ must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole, and; (5) the specialization of the treating source, as mandated under 20 C.F.R. § 404.1527(d) and §416.927(d). See *Bowen v. Commissioner of Social Sec.,* 478 F.3d 742, 747 (6th Cir. 2007)(citing *Wilson*, 378 F.3d at 544).   On the opposite end of the spectrum, the opinion from a non-examining physician should be given little weight "if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir.1985)).

5:08 CV 425                                   6

There is a modicum of clarity required:

> A Social Security Ruling explains that, pursuant to this provision, a decision denying
> benefits "must contain specific reasons for the weight given to the treating source's
> medical opinion, supported by the evidence in the case record, and must be
> sufficiently specific to make clear to any subsequent reviewers the weight the
> adjudicator gave to the treating source's medical opinion and the reasons for that
> weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996). "The requirement of
> reason-giving exists, in part, to let claimants understand the disposition of their
> cases," particularly in situations where a claimant knows that his physician has
> deemed him disabled and therefore "might be especially bewildered when told by an
> administrative bureaucracy that she is not, unless some reason for the agency's
> decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The
> requirement also ensures that the ALJ applies the treating physician rule and permits
> meaningful review of the ALJ's application of the rule. See *Halloran v. Barnhart,*
> 362 F.3d 28, 32-33 (2d Cir.2004).

> *Wilson v. Commissioner of Social Sec.*  378 F.3d at 544 -545.

The ALJ also must consider the medical opinions "together with the rest of the relevant evidence."

See 20 C.F.R. §404.1527(b) and §416.927(b). Ultimately of course, the ALJ must provide "good

reasons" to discount the opinion from a treating physician. See *Wilson v. Commissioner of Soc. Sec.*

378 F.3d  at 544; 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2).

The first reason advanced by the ALJ was that the doctor's assessment is not specific enough

for SSA disability evaluation.  Essentially  Dr. Lefkovitz  provided non-specific quantification of

the limitations as difficulty sitting and standing for "prolonged periods" and no "significant" lifting.

These restrictions can be read as consistent with reduced ranges of sedentary or light work.  Granted

"treating physicians are 'the medical professionals most able to provide a detailed, longitudinal

picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone[.]" *Rogers v.*

5:08 CV 425                                7

*Commissioner of Social Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  However, the vague abilities to sit,

stand and lift to some unspecified degree are arguably internally inconsistent and refute a conclusion

of total disability. This reason does relate to supportability.

Next,  the ALJ noted that the examinations were generally normal. (Tr. 20). Obviously the

ALJ reasoned that the doctor's opinion was not  "well-supported by medically acceptable clinical

and laboratory diagnostic techniques."  *But,* what is baffling about the ALJ's proffered  reason that

examinations were normal is that the ALJ had earlier in the determination noted that ranges of spinal

motion were diminished, paravertebral tenderness and tightness were present, and that the doctor

had noted problems in gait and station (Tr. 19). Also the ALJ stated that examination of the lumbar

spine was "normal"  when the doctor did not report ranges of motion, or even if he did. (Tr. 19). For

example, the ALJ found "normal" examination in Ex. B30F/16 despite Dr. Lefkovitz' report of 30

degrees flexion, 5degrees extension and 5 degrees lateral flexion. (Tr. 19, 435).

Supportability is simply "[t]he more a medical source presents relevant evidence to support

an opinion, particularly medical signs and laboratory findings, the more weight we will give that

opinion. See 20 C.F.R. §§404.1527(d)(3) & 416.927(d)(3).  The regulations  require that the treating

physician's  opinion  must  be  "well-supported  by  medically  acceptable  clinical  and  laboratory

diagnostic techniques."  This includes reporting :  (1) treatment provided; (2) extent of examination;

and (3) testing (20 C.F.R. §404.1527(d)(2)(ii) and §416.927(d)(2)(ii)).  Dr. Lefkovitz had provided

these items. The doctor provided his medical findings and treatment, (Tr. 285-98, 420-39, 440-75),

and the records from supplemental chiropractic treatment were also included. (Tr. 162, 298, 129-

5:08 CV 425                                        8

159, 336-352).  Supportability is often used in a comparative fashion.  Both Dr. Lefkovitz and the residual functional capacity assessment from non-examining physicians (to which the ALJ did defer as supporting light work) relied essentially on the same objective evidence. Supportability was not appropriately used in the ALJ's rejection of the treating physician's opinion.

This leads to the third and fourth reasons advanced for rejecting Dr. Lefkovitz' opinion. The ALJ referred to the residual functional report from non-examining state agency physicians to support a light work finding.  (Tr. 20, 279-284).  Alone this is insufficient. See *Shelman v. Heckler*, 821 F.2 at 321.  However, this comparison was in conjunction with another report from an examining physician, Dr. Bond, whose opinion supported light work capability. (Tr. 20-21). Dr. Bond examined Recklaw in connection with a Workers' Compensation claim on February 10, 2003, only a few months after Dr. Lefkovitz' opinion of disability with explanation. (Tr. 229-31, 297). Dr. Bond provided comprehensive findings from the physical examination including measurement for possible muscle atrophy, range of motion studies, paravertebral muscle tenderness, manual muscle strengths, and straight leg raising (Tr. 229-230). Dr. Bond's impression was  sprain in the lumbar region, aggravation of pre-existing spondylolisthesis at L5-S1, lumbar sprain/strain, sacroiliac sprain/strain (Tr. 230). He indicted on a form his conclusion that Recklaw could perform light work (Tr. 231).

The ALJ's consideration of the state agency physicians and Dr. Bond's opinion goes to consistency.  Consistency is "the more consistent an opinion is with the record as a whole, the more weight we give that opinion." See 20 C.F.R. §§404.1527(d)(4) & 416.927(d)(4). Dr. Lefkovitz' opinion was not consistent with the other opinions.  *But*, as Recklaw points out,  the ALJ ignored

the opinion of disability from Dr. Bressi. (Tr. 208-09). Dr Bressi reported on September 17, 2001

that an EMG nerve conduction study showed radiculopathy on the right S1 and bilaterally at the L4-

5 in addition to the MRI evidence of spondylosis and spondylolisthesis. Dr. Bressi found Recklaw

to be in extreme pain and reported that Dr. Lefkovitz' Oxycontin prescription only took the edge off

the pain, and that Recklaw was out of this drug. (Tr. 208). Dr. Bressi prescribed Oxycontin so

Recklaw would not need to wait until the next day to see Dr. Lefkovitz, and concluded that Recklaw

was disabled by severe pain, a severely degenerated back and documented nerve injury (Tr. 209).

The reason supplied by the ALJ was consistency with other examining sources, but the ALJ did not

consider Dr. Bressi's opinion.


After the ALJ finds that the treating physician's opinion is unsupported or inconsistent, he

is required to consider the factors contained in §§404.1527(d) and 416.927(d). See *Bowen*, 478 F.3d

at 747.  In this matter the ALJ did note the duration of the treatment relationship from August 1999

to March 2006 (Tr. 19). However, he did not note that Dr. Lefkovitz saw Recklaw about every six

weeks, and as for the factors of supportability and consistency, they were deficiently addressed for

the reasons stated above.  In short, the ALJ failed to provide "good reasons." The court cannot

compensate for the ALJ's failure with its own reassessment for "failure to follow the procedural

requirement of identifying the reasons for discounting the opinions and for explaining precisely how

those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even

where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243

(citing *Wilson* 378 F.3d at 544). As a result, the ALJ's rejection of the opinion from this treating

physician lacks substantial evidence.

5:08 CV 425                                    10

*Dr. Queen-Williams' Opinion of Disability:*

The ALJ began his analysis of Dr Queen-Williams opinions of disability stating correctly that a treating physician's opinion is to be given great weight , but only if it is supported by evidence and  is consistent with the medical evidence as a whole. (Tr.22).  The Commissioner assumes that the ALJ conducted a comparison with other psychological assessments. The ALJ notes discrepant opinions to show non-disabling impairment but does not directly incorporate the conflicting opinions into the ALJ's analysis of Dr. Queen-Williams' opinions (See Tr. 21-22).  However, the ALJ's discussion of the opinions of non-disabling impairment preceded this statement in his discussion of Dr. Queen-Williams' opinions, and this is sufficiently specific, so it appears to the undersigned that the ALJ was attempting to state that there was inconsistent opinion.

*Dr. Byrnes:*

The ALJ  relied on the psychological consultative report from Dr. Byrnes, which stated that Recklaw could not return to his past relevant work but could perform sustained remunerative employment (Tr. 21).  Recklaw claims this mischaracterized the evidence, but Recklaw  obviously did not see the separate document from Dr. Byrnes' report in which Dr. Byrnes made this statement. (Tr. 241).

*Dr. Tosi:*

The ALJ also relied on psychologist Dr. Tosi's conclusion that Recklaw was able to complete a normal workday and workweek. (Tr. 21).  Recklaw cites to Dr. Tosi's consultative report

5:08 CV 425                                        11

for this doctor's statement that Recklaw would have some difficulty sustaining focus and attention long enough to permit completion of tasks in a suitable work environment. (Tr. 274). The ALJ ignored this conclusion and noted only that Dr. Tosi believed that Recklaw could maintain attendance and complete a normal work day. (Tr. 21, 274). Arguably this was selective review, but the error is harmless in light of Dr. Tosi's opinion that from the psychological standpoint of the allowed Workers' Compensation claim, Recklaw could return to truck driving. (Tr. 276). The ALJ also noted a list of daily activities reported by Dr. Tosi, such as light housework, watching TV, visiting with friends and relatives, preparing meals, and mowing the lawn over the course of two days, and Dr. Tosi's finding of mild limitation. (Tr. 21, 273, 275).


*Dr. Dallara:*

The ALJ also relied on this psychologist's consultative examination findings at the behest of the state agency (Tr. 21, 247-252). Dr. Dallara reported several normal findings and concluded that mental impairment was mild. Recklaw has no challenges to this doctor's report.


*Mental Residual Functional Capacity from State Agency Psychologists:*

The ALJ determined that Recklaw retained the residual functional capacity for simple, repetitive tasks without public contact, and that this was consistent with the opinion of the state agency psychologists. (Tr. 22). Recklaw argues that the ALJ ignored that the mental residual functional capacity assessment prepared by state agency psychologists noted moderate restrictions in 10 areas including the ability to complete a normal workday without interruption (Tr. 268). The Commissioner responds that the check marks indicating moderate restrictions on the mental residual

5:08 CV 425                                    12

functional capacity assessment in Section I did not represent the actual assessment but was merely

a "worksheet" to aid in determining the degree of functional limitation.  The Commissioner goes on

to point out that it is Section III of the report that is the actual mental RFC assessment.   Section III

begins with the following instruction:

> Record in this section the elaborations to the preceding capacities. Complete this
> section ONLY after the SUMMARY CONCLUSIONS section has been completed.
> Explain your summary conclusions in narrative form. Include any information which
> clarifies limitation or function. Be especially careful to explain conclusions that differ
> from those of treating medical sources or from the individual's allegations. (TR. 269).

The Commissioner explains that the Social Security Administration's Program Operations

Manual System (POMS) DI 24510.060 and  DI 24510.060B4 clarify that "Section III Functional

Capacity Assessment, is for recording the mental RFC [residual functional capacity] determination.

It is in Section III that "the actual mental RFC assessment is recorded . . ."[3]  Under Section III  that

state agency psychologists found Recklaw's mental residual functional capacity was restricted to no

contact with the general public, reduced concentration, persistence and pace, no fast-paced or high-

stress work environments, but with the ability for routine, non-academic , non-social work. (Tr. 269).

Contrary to the Commissioner, these restrictions do not align with the ALJ's finding of limitations

to simple, repetitive tasks without public contact. For one matter, the ALJ neglected to consider

restriction to reduced pace. (Tr. 269). Thus, the ALJ's statement that the restrictions he placed on

Recklaw are consistent with the findings of the state agency psychologists, is not quite correct. (Tr.

22).

---

[3]  The POMS is the operational reference used by SSA staff to conduct SSA's daily business.  "While these
administrative interpretations [POMS] are not products of formal rulemaking, they nevertheless warrant respect . . ."
*Washington Dep't of Soc. Servs. v. Keffeler*, 537 U.S. 371, 385 (2003).   The POMS is available at
http://www.ssa.gov/regulations/index.htm.

5:08 CV 425                                          13

*"Dr. Schmitt:"*

Recklaw faults the ALJ for ignoring the report from Dr. Schmitt which diagnosed a single episode of major depression in August 1999 (Tr. 334). Recklaw is mistaken. That report is from a social worker. (See Tr. 329-335).  It has no binding effect and warrants a low level of consideration. See 20 C.F.R. §§404.1513(d)(3) and 416.913(d)(3).


*Weight to give Dr. Queen-Williams' Opinion:*

Again after the ALJ has found inconsistency with other substantial evidence, the ALJ must address the factors under §§404.1527(d) and 416.927(d). The ALJ acknowledged that Dr. Queen-William was the treating psychiatrist. The ALJ also did engage in review of supportability and consistency. The ALJ gave several reasons for rejecting the opinions of disability from Recklaw's treating psychiatrist. (Tr. 22). The foremost was inconsistency between the doctor's January 2004 report of ability to remember, understand and follow single directions , maintain attention, function on his own, but would not be capable of simple, routine or repetitive tasks (Tr. 22,  305-07). The ALJ, though, ignored the qualifying statements associated with these comments that the ability to understand and follow directions existed only when pain was not intense or mood significantly depressed, and the same limitation applied to maintaining attention, extremely poor adaption, and inability to sustain concentration, or persistence due to pain and depression (Tr. 306).  So when Dr. Queen-Williams' January 2004 report is not reviewed selectively, it does not refute her other statements that Recklaw is disabled.

5:08 CV 425                                   14

Another reason advanced by the ALJ was that the reports from this psychiatrist were conclusory.  Recklaw's challenges this reason arguing that Dr. Queen-Williams' opinion of disability should be given the benefit of longitudinal experience, and the record contains her treatment notes (See Tr. 299-335, 399-403, 441-448). However, the ALJ does have a point with respect to some of this psychiatrist's opinion letters.  For example, the doctor provides her diagnoses in her August 2004 report of major depression, cannabis dependence, alcohol dependence and personality disorder not otherwise specified, with comments such as Recklaw can sustain only limited contact with others and poor response to medication, followed by the opinion of inability to work (Tr. 301).  Diagnoses alone do not preclude the ability to work. See *Cohen v. Secretary of Dept. of Health and Human Services,* 964 F.2d 524, 529, 37 Soc. Sec. Rep. Serv. 341 (6th Cir. 1992). As the ALJ notes these reports do not describe residual functional capacity or functional limitation.  However, this deficiency is some of the doctor's opinions is overcome by the January 2004 report, where Dr. Queen-Williams quantified her findings with respect to mental residual functional capacity.

The ALJ next states that Recklaw is still using cannabis and the doctor "did not include this in her assessment." (Tr. 22). The reason advanced is vague but it appears to relate to the Contract with America Advancement Act amended 42 U.S.C. §423(d)(2)(C) which  reads, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled, " and regulations enacted to carry out its purpose See

5:08 CV 425                                    15

20 C.F.R. §§404.1535 and 416.935. [4]  Dr Queen-Williams did not factor out the effects of Recklaw's

alcohol and drug dependence.  However, before an ALJ considers whether substance abuse is

contributing factor to a claimant's disability, the claimant must be adjudged disabled. See note,  20

C.F.R. §§404.1535(a) and 416.935(a). The ALJ did not find Recklaw disabled due to mental

impairment and therefore it was appropriate to include cannabis and alcohol dependence in assessing

the degree of impairment.


   Finally, the ALJ advances that Recklaw missed treatment sessions with Dr. Queen-Williams.

(Tr. 22). Missed treatment sessions could reflect a lack of commitment to treatment. See *Rich v.*

*Commissioner of Social Sec.,* 2008 WL 4450285, 4 (E.D. Mich.). However, the ALJ does not examine

the number of treatment sessions missed or whether there was good excuse for missing them. Just

missing some treatment sessions without  nexus to "remediability" does not advance "good reason" to

---

[4]  Sections 20 C.F.R. 20 C.F.R. §§404.1535 and 416.935 implement the provision setting out the following
procedure:
   **How we will determine whether your drug addiction or alcoholism is a contributing factor**
   **material to the determination of disability.**

(a) General. If we find that you are disabled and have medical evidence of your drug addiction or
alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor
material to the determination of disability.
(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
(1) The key factor we will examine in determining whether drug addiction or alcoholism is a
contributing factor material to the determination of disability is whether we would still find you
disabled if you stopped using drugs or alcohol.
(2) In making this determination, we will evaluate which of your current physical and mental
limitations, upon which we based our current disability determination, would remain if you stopped
using drugs or alcohol and then determine whether any or all of your remaining limitations would be
disabling.
(I) If we determine that your remaining limitations would not be disabling, we will find that your drug
addiction or alcoholism is a contributing factor material to the determination of disability.
(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your
drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a
contributing factor material to the determination of disability.
20 C.F.R. §§404.1535 and 416935.

5:08 CV 425                                    16

refute the opinion of disability. [5] Accordingly,  the ALJ did not advance "good reason" to reject the opinion of disability from Dr. Queen-Williams and the ALJ's decision was not supported by substantial evidence.


*Rejection of Vocational Consultant's Report:*

Recklaw faults the ALJ for not considering a vocational report which states the Recklaw would not be an appropriate candidate for additional education and training. (Tr. 225). This point is moot since the ALJ considered Recklaw as having limited education with no transferable skills (applying Rule 202.18 in Table No. 2 for light work) and a need for additional education or training was not a consideration at the administrative hearing. The reason advanced by the ALJ for rejecting this vocational evidence was that this report was prepared for Workers' Compensation purposes.


This is not a valid reason. The ALJ is confusing the rule that determinations made by other agencies are not  binding on the Commissioner. See 20 C.F.R. §§ 404.1504, 416.904; see also *Hampton v. Sect'y of Health & Human Servs.*, 972 F.2d 347, 1992 WL 188112, at *1 (6th Cir.1992) (unpublished table decision) (holding that a claimant is not entitled to Social Security disability "just because he is receiving worker's compensation"); *Gaskin v. Commissioner of Social Sec.,* 280 Fed.Appx. 472, 477, 2008 WL 2229848, 5 (6th Cir. 2008)(same). The vocational report was not a determination from Ohio's Industrial Commission adjudicating Recklaw's claim.

_____

[5] This principle is implemented through 20 C.F.R. §§ 404.1530 and 416.930, that "In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."

5:08 CV 425                                    17

 This error is harmless insofar as it would not affect the outcome of the ALJ's decision. The ALJ

found Recklaw had a residual functional capacity for light work with several non-exertional

limitations. However, the vocational expert in the report for Recklaw's Workers' Compensation

claim, which is in issue here, based the vocational responses on inability to perform even the full

range of sedentary work (Tr. 225).  The ALJ rejected the notion that Recklaw's residual

functional capacity was limited to sedentary work, so that vocational expert's opinion became

inconsequential.   As explained in *Maziarz v. Secretary*, 837 F.2d 240 (6th Cir. 1987), it is the

ALJ's function to determine what medical restrictions an applicant has and how they affect the

claimant's residual functional capacity, not the vocational expert's.  *Id*. at 247.  It is not the

vocational expert's responsibility to evaluate the medical record or assess the credibility of

witnesses. The vocational expert's function is only to identify what jobs exist withing the

parameter of the hypothetical questions propounded to the expert. See *Sias v. Secretary*, 861 F.2d,

475, 481 (6th Cir. 1988).


*Credibility:*

        Finally, Recklaw argues that the ALJ did not have a valid basis for discounting her

credibility. He cites the following analysis:

> First, even if the claimant's daily activities are truly as limited as alleged, it is
> difficult to attribute the degree of limitation to the claimant's medical condition, as
> opposed to other reasons, in view of the medical evidence, which shows the
> claimant would be capable of simple repetitive tasks at the light exertion level, but
> with no public contact. Second, the medical evidence of record shows that
> treatment has been conservative in nature and has afforded some control of the
> claimant's physical and mental symptoms.  (Tr. 23).

5:08 CV 425                                     18

The role of the court is not to examine the credibility of claimant's testimony or resolve

conflicting evidence but rather to determine whether substantial evidence supports the

Commissioner's determination of disability within the meaning of the Social Security Act.  See

*Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Credibility determinations track pain analysis.

See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th

Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-

32 (6th Cir. 1997); and see *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621

(Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3). The rule is,

> An individual's statements about the intensity and persistence of
> pain or other symptoms or about the effect the symptoms have on
> his or her ability to work may not be disregarded solely because they
> are not substantiated by objective medical evidence.

SSR 96-7p, 1996 WL 374186 (S.S.A.) at *1.


The ALJ's discussion of this issue must contain clearly stated reasons. *Felisky v. Bowen*,

35 F.3d at 1036, citing *Auer v. Secty. of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).

The ALJ is not required to "expressly refer to each document in the record, piece by piece."

*Coggon v. Barnhart*, 354 F.Supp.2d 40, 55 (D.Mass.2005). However, the ALJ is required to

provide  "specific reasons for the finding on credibility, supported by the evidence in the case

record, [that] must be sufficiently specific to make clear to the individual and to any subsequent

reviewer the weight the adjudicator gave to the individual's statements and the reasons for that

weight[,]" aside from mere lack of substantiation by objective evidence. See SSR 96-7p, 1996 WL

374186 *1-2; *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621  at *2.  " It is

5:08 CV 425                                            19

also not enough for the adjudicator simply to recite the factors that are described in the regulations

for evaluating symptoms." *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must

"build an accurate and logical bridge from the evidence to . . .the conclusion." *Id.*, 245 F.3d at 887.


        The ALJ acknowledged SSR 96-7p in assessing residual functional capacity. (Tr. 22). The

format set forth in SSR 96-7p outlines the administrative evaluation process beginning with

traditional two-prong *Duncan* pain analysis plus the additional regulatory considerations under 20

C.F.R. §404.1529(c)(3) and §416.929(c)(3).  See *Duncan v. Sec'y of Health & Human Services*,

801 F.2d 847, 853 (6th Cir. 1986); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir.

2007).


        Under the two-prong  pain analysis, there first must be a determination whether there exists

an underlying medically determinable physical or mental impairment followed by the question

whether the impairment would be reasonably expected to produce the individual's pain or other

symptoms. SSR 96-7p, 1996 WL 374186 at *2. The second question then is the reasonableness of

the alleged debilitating pain. The mandated considerations require the ALJ to investigate

subjective complaints of pain or other symptoms based on:

        1.        The claimant's daily activities;

        2.        The location, duration, frequency,  and intensity of pain;

        3.        Precipitating and aggravating factors;

5:08 CV 425                                   20

4.      The type, dosage, effectiveness, and side-effects of medication to alleviate
        pain or other symptoms;

5.      Treatment, other than medication claimant has received for relief of pain;
        and

6.      Any other measures used to relieve pain (e.g. lying down or changing
        position).

7.      Other factors concerning functional limitations and restrictions due to pain
        or other symptoms.

See SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(i-vii); §416.929(c)(3)(i-vii).

         The ALJ considered and rejected Recklaw's self-described limitations of daily activities

(Tr. 22-23). His first reason advanced was Recklaw's claim that eight doctors had recommended

surgery for his back impairment was not supported by the record. (Tr. 23). Recklaw appears to

have been caught in an exaggeration. Dr. Lefkovitz worked in conjunction with orthopedist Dr.

Weiner and Dr. Weiner stated only if chiropractic care was unsuccessful would surgical

intervention be indicated.  (Tr. 162,  298).  Subsequently, Recklaw underwent two facet joint

injections, but there is no recommendation of surgery. (Tr. 165-66).  Recklaw later stated to Dr.

Bressi that surgery had been recommended but he had refused surgery, which Dr. Bressi related

in his report. (Tr. 208). Recklaw attempts to show truth to his statement with Dr. Bressi's report.

This, though, is uncorroborated hearsay, and does not verify surgery had ever been recommended

for Recklaw. It established only that Recklaw had stated that surgery had been recommended.

         This issue, though, is tangential to whether complaints of physical pain serve as the basis

of a finding of disability.  If an examining medical source notes exaggeration or faking by

5:08 CV 425                                    21

claimant, that is an appropriate basis for dispute of alleged disabling condition. See *Williamson v.*

*Secretary of HHS*, 796 F. 2d 146, 149-50 (6th Cir. 1986).  No medical source found reason to state

Recklaw was faking or exaggerating.  Also if a jury notes a false statement it can discredit all

testimony from a witness under the principle of *falsus in uno, falsus in omnibus*. However, this

principle is no substitute for the required analysis of subjective complaints of pain, which if

credited would establish disability.


       The ALJ's  second reason  to reject credibility was to refer to the "medical evidence."

This reliance  alone on lack of substantiation from objective evidence is contrary to SSR 96-7p.


       His third reason  was that  conservative treatment has afforded some control over

Recklaw's physical and mental symptoms. (Tr. 23). This analysis is incomplete. There was no

consideration of the type and dosage and the other regulatory pain considerations have been

short-circuited. Recklaw points out that he was prescribed Oxycontin, an indication of severe

pain, and also prescribed anti- inflammatory medication  and a TENS unit. Further, while the ALJ

is correct that Dr. Lefkovitz noted normal appearance, orientation, memory, and attention. (Tr.

435), that doctor also reported low back pain on the next page of the medical notes. (Tr. 436). So

it is difficult to discern where in the record was there evidence to support this conclusion that the

conservative treatment afforded some control consistent with light work for the ALJ to reject

Recklaw's statements of very restricted physical activities. Accordingly, the ALJ's assessment of

Recklaw's credibility was not supported by substantial evidence and was conducted in

accordance with administrative regulatory procedures.

5:08 CV 425                                          22

*Fourth Sentence Remand:*

The major flaw in the determination under review is the lack of "good reasons" in the rejection of opinions of disability from Dr. Lefkovitz and Dr. Queen-Williams. *Wilson* instructs that the failure to give "good reasons" is generally not harmless error. See *Wilson*, 378 F.3d at 546. There are three areas of exception noted in *Wilson*, but these  are not applicable here. [6] Generally, when the Commissioner misapplies the regulations or when one of the ALJ's factual findings is not supported by substantial evidence, recourse is through a remand under sentence four. *Faucher v. Secretary of HHS*, 17 F.3d 171, 175-76 (6th Cir. 1994).

The Commissioner's decision may be reversed and benefits awarded only when the Commissioner's decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. See *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994)(citing *Faucher v. Secretary*, 17 F.3d at 176). Albeit the court is barred from its own assessment of the evidence of record with respect to deeming the deficiency harmless. See *Rogers*, 486 F.3d at 243 (citing *Wilson* 378 F.3d at 544). However, *Wilson* does not alter the standard on remand and  the court can compare and assess the evidence in resolving whether to terminate the proceedings and  remand for an award of benefits or remand for further administrative review.  In this matter, proof of disability is neither overwhelming nor strong and without contradiction, and the record contains evidence detracting from Recklaw's claim of total

---

[6] *Wilson* provided examples of harmless error as when the treating physician's opinion is patently deficient that it could not possibly be credited, where the treating physician's conclusions are implicitly adopted by the ALJ, or when the procedural goal has been met although the ALJ had not complied with the terms of 20 C.F.R. §404.1527(d)(2). *Id.*, 378 F.3d at 547; and see *Bowen* 478 F.3d at 747-48.

5:08 CV 425                                             23

disability. Accordingly, the matter should be remanded under the fourth sentence for further

administrative  proceedings.


### CONCLUSION AND RECOMMENDATION

For the foregoing reasons based on the arguments presented, the record in this matter and

applicable law, the undersigned finds that the Commissioner's decision denying supplemental

security insurance benefits is not supported by substantial evidence and should be reversed and

remanded under the Fourth Sentence of 42 U.S.C. §405(g) for reconsideration consistent with this

report.

                                    _____s/James S. Gallas_____
                                    United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of

Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified

time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v.*

*Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


Dated February 5, 2009